**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Filimex, L.L.C., <br>     Plaintiff, <br> vs. <br> Novoa Investments, L.L.C., <br>     Defendant. | No. CV 05-3792-PHX-SMM <br><br> **MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is Defendant Novoa Investments, L.L.C.'s ("Novoa") Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) for failure to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. §§1-16 (the "FAA"). (Dkt. 5.) On January 26, 2006, Filimex filed an Application for a Writ of Attachment in the amount of $73,569.83. (Dkt. 6.) In this Order, the Court also addresses Novoa's Motion to Dismiss Filimex's Application for Provisional Remedy. (Dkt. 10.)

**FACTUAL BACKGROUND**[1]

Filimex is the owner of the federally registered trademark "Filiberto's." (Dkt. 1 at ¶1.) Filimex acquired the "Filiberto's" mark from the Chapter 7 Trustee for Leaseco, Inc. ("Leaseco"), after a bankruptcy instituted by Leaseco was converted to a Chapter 7 liquidation case. (Id. at ¶9-10.) As a result, Filimex is also the successor in interest to

---

[1] For the purpose of these motions, the following facts are not disputed.

Leaseco on all trademark license agreements entered into between Leaseco and third parties. (Id. at ¶10.)

On March 5, 2001, Novoa and Leaseco entered into a Trademark License Agreement (the "License Agreement"), whereby Novoa obtained a license to use the trademark "Filiberto's" in connection with a Mexican food restaurant located at 22nd Street and Kolb Avenue in Tucson, Arizona (the "Restaurant"). (Id. at ¶11.) Among other things, the License Agreement provides for Novoa to make monthly payments to Leaseco (now, Filimex) for permitting its use of the mark "Filiberto's." (Id., Ex. A at 2-3.) The License Agreement also contains the following arbitration provision:

> In the event of any dispute between Licensor and Licensee arising under or pursuant to the terms of this Agreement, the same shall be settled only by Arbitration in the State of California, in the Los Angeles office of the American Arbitration Association under the then pertaining rules and regulations of the American Arbitration Association. The Determination of the arbitrators shall be final and binding upon the parties and may be enforced in any court of appropriate jurisdiction.

(Dkt. 1, Ex. A at 6, ¶15) (emphasis added) (the "Arbitration Provision").

Novoa has allegedly failed to make payments under the License Agreement. As a result, on or about September 8, 2005, the Chapter 7 Trustee for Leaseco terminated the License Agreement. (Id. at ¶12, Ex. B.) Filimex alleges that, notwithstanding termination of the License Agreement and despite its knowledge that Filimex is the owner of the "Filiberto's" mark, Novoa continues to operate the Restaurant using the mark "Filiberto's" without the permission or approval of Filimex. (Id. at ¶13.)

Filimex's Complaint asserts four claims against Novoa, and seeks to recover injunctive and monetary relief, as well as attorneys' fees pursuant to A.R.S. §12-341. (Id.

at ¶14.) In count one, Filimex alleges that Novoa breached the License Agreement by failing to pay the amounts due under the terms of the Agreement. (Id. at ¶¶15-16.) Filimex further alleges that, on or about March 22, 2005, Leaseco and Novoa agreed that a balance of $73,596.83 was due Leaseco under the License Agreement and no part of that sum has been paid to Filimex. (Id. at ¶17-18.)

Relying on the Lanham Act, 15 U.S.C. §§ 1114, et seq., and common law, Filimex's second and third counts allege trademark infringement and common law trademark, trade name, and trade dress infringement based on Novoa's continued operation of the Restaurant using the mark "Filiberto's," as well as menus, recipes, logos, methods of operation, and other elements of trade dress and intellectual property. (Id. at ¶¶21-22, 30-32.) Filimex alleges that the License Agreement has been terminated, and therefore Novoa is not authorized to use the mark "Filiberto's" in connection with the Restaurant. (Id. at ¶23.) Count four alleges that Novoa's acts of trademark infringement constitute Unfair Competition under Arizona law. (Id. at ¶¶37-42.)

**DISCUSSION**

**I.    Motion to Dismiss For Lack of Subject Matter Jurisdiction**

**A.    Procedural Sufficiency of Novoa's Motion to Dismiss**

Novoa contends this Court lacks subject matter jurisdiction over Filimex's Complaint because the parties agreed to arbitrate any and all claims "arising under or pursuant to" the terms of the License Agreement. Before addressing the substance of Novoa's motion, the Court must consider Filimex's contention that Novoa's Rule 12(b)(1) motion fails to properly request an order compelling arbitration. (Dkt. 7 at 2.) The Court finds that Novoa's Motion to Dismiss is a procedurally sufficient mechanism to enforce the Arbitration Provision.

Instead of filing a motion to compel arbitration pursuant to section 4 of the FAA, Novoa filed a Motion to Dismiss for Lack of Subject Matter jurisdiction under Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction contests the Court's authority to hear and decide the case, and is thus typically used when the claims

- 3 -

1  asserted do not involve federal questions and there is no diversity of citizenship between the
2  parties or other basis for the federal court to exercise its limited jurisdiction. See 5A Charles
3  Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d §1350 (2d ed.
4  1990). Rule 12(b)(1) is a flexible rule, though, that "often serv[es] as a vehicle for raising
5  various residual defenses" such as failure to exhaust administrative remedies, lack of
6  standing, or sovereign immunity. Id.

7  Moreover, the FAA itself does not state that a document entitled "motion to compel"
8  must be filed to trigger the protections of the FAA, but states that the party must "petition"
9  the court for an order directing arbitration to proceed. Courts, therefore, have allowed the
10 party to "petition" the court through the use of a motion to dismiss for lack of subject matter
11 jurisdiction. One Circuit has held that to require a motion to compel instead of a motion to
12 dismiss would be "hypertechnical" and undermine the "liberal federal policy favoring
13 arbitration agreements." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d
14 707, 709-10 (4th Cir. 2001) (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,
15 460 U.S. 1, 24 (1983) (Moses)). The Choice Hotels court found that as long as the party
16 made clear that it was seeking enforcement of the arbitration clause in its motion to dismiss,
17 it had sufficiently "invoke[d] the full spectrum of remedies under the FAA." Choice Hotels,
18 252 F.3d at 710. Other courts have also considered Rule 12(b)(1) motions to dismiss for
19 failure to arbitrate to be procedurally sufficient mechanisms to invoke the FAA. See, e.g.,
20 Thompson v. Nienaber, 239 F.Supp.2d 478, 482-84 (D. N.J. 2002) (although a party seeking
21 to enforce an agreement to arbitrate typically does so by filing a motion to compel
22 arbitration, a party may instead to bring a motion to dismiss under Fed.R.Civ.P. 12(b)(1)).

23 Here, the Court finds that Filimex is fully aware that Novoa's Motion to Dismiss deals
24 with the arbitrability of their dispute and has had the opportunity to respond appropriately.
25 See Dkt. 5 at 8-9. Indeed, contrary to Filimex's contention, the substance of Novoa's Motion
26 to Dismiss actually does request "an order directing that . . . arbitration proceed" under 9
27 U.S.C. §4 (see dkt. 5 at 4), which is sufficient to invoke the full spectrum of remedies under

28

- 4 -

1 the FAA. Novoa's request also constitutes an express agreement to submit to arbitration.
2 Choice Hotels, 252 F.3d at 710. Moreover, were this Court to deny the Motion to Dismiss
3 because the wrong document was filed, Novoa would undoubtedly file a motion to compel
4 arbitration and the parties would present the same arguments as presented here. The Court
5 will avoid a "hypertechnical" ruling that would inevitably lead to duplicative litigation and
6 will presently consider the arbitrability of this dispute.

**B. Standards Of Review: Motion to Dismiss and Motion to Compel Arbitration**

8 A motion to dismiss pursuant to Rule 12(b)(1) challenges the plaintiff's assertion that
9 the court has subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1); Doe v. Schachter, 804
10 F.Supp. 53, 56 (N.D.Cal. 1992). When the defendant asserts a factual challenge to
11 jurisdiction based on the examination of extrinsic evidence, the allegations in the complaint
12 are not presumed true. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). The
13 court may receive evidence regarding jurisdiction and resolve factual disputes. Id. The party
14 invoking federal jurisdiction has the burden of proving that jurisdiction exists. Scott v.
15 Breeland, 792 F.2d 925, 927 (9th Cir.1986).

16 The standard for demonstrating arbitrability is not high. The FAA mandates that
17 district courts direct the parties to proceed to arbitration on issues as to which an arbitration
18 agreement has been signed. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)
19 (Dean Witter). The Court's only role when presented with a question of arbitrability is to
20 determine (i) whether a valid arbitration agreement exists and (ii) whether the scope of the
21 parties' dispute falls within that agreement. See 9 U.S.C. § 4; Chiron Corp. v. Ortho
22 Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Federal courts must order parties
23 to proceed to arbitration if there has been a "failure, neglect, or refusal" to honor an
24 agreement to arbitrate. See 9 U.S.C. §4. Absent unmistakably clear language to the contrary,
25 arbitration should be ordered unless it can be said that the arbitration clause is not susceptible
26 of an interpretation that covers the asserted dispute. Moses, 460 U.S. at 24-25.

In the present case, the parties do not dispute that the License Agreement contains a valid Arbitration Provision; the only issue is whether the claims at issue fall within the scope of the Arbitration Provision.  See Dkt. 7 at 8-9.

### C. The Arbitration Provision

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses, 460 U.S. at 24-25.  Under the FAA, if the parties have agreed to arbitrate and that agreement has not been honored, and the dispute falls within the scope of that agreement, the Court must order arbitration. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967).  This is true even if the result might require the maintenance of separate proceedings in different forums. See Dean Witter, 470 U.S. at 217. This principle applies equally to statutory claims, unless the party seeking to avoid arbitration establishes that Congress intended to preclude arbitration of the statutory rights at issue.[2] See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624-26 (1985); see also Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 90-92 (2000).

The key sentence of the Arbitration Provision at issue here provides, "In the event of any dispute between Licensor and Licensee arising under or pursuant to the terms of this Agreement, the same shall be settled only by Arbitration . . . ." (Dkt. 1, Ex. A at ¶15) (emphasis added).  Filimex contends the Arbitration Provision is narrow and plainly applies to only limited contractual disputes concerning the License Agreement. Specifically, Filimex concedes that its breach of contract claim is subject to arbitration (dkt. 7 at 9-10), but argues that its trademark infringement, common law trademark, trade name and trade dress

---

[2] Filimex does not assert that Congress has excluded federal trademark infringement claims from arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("It is now clear that [federal] statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) ("This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights.").

1  infringement, and unfair competition claims "relate to post-termination conduct . . . that are
2  not 'pursuant to' and . . . do not 'arise under'" the License Agreement. (Id. at 9.)  Filimex,
3  who has the burden of establishing that the FAA does not apply to their claims, Gilmer v.
4  Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991), has not met that burden.

5        The scope of an arbitration provision is governed by federal law, Simula, Inc. v.
6  Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).  In accordance with the strong and liberal
7  federal policy favoring arbitration agreements, courts construing arbitration agreements must
8  broadly construe them and must resolve any ambiguities in an arbitration clause and any
9  doubts concerning the scope of arbitrable issues in favor of arbitration.  Moses, 460 U.S. at
10 24-25.  The Ninth Circuit has found that the contractual language "all disputes arising under"
11 must be construed liberally in arbitration clauses.  Simula, 175 F.3d at 720.  The plaintiff's
12 factual allegations need only "touch matters" covered by the contract containing the
13 Arbitration Clause.  Id.  Other circuits, analyzing the same language, have reasoned that the
14 clause does not limit arbitration to the literal interpretation or performance of the contract but
15 embraces every dispute having a significant relationship to the contract regardless of the label
16 attached to the dispute.  Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315,
17 321 (4th Cir. 1988); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987)
18 (finding that any claims concerning the parties' loan agreement obligations should be
19 arbitrated); Blinco v. Green Tree Servicing, LLC, 400 F.3d 1308, 1312 (11th Cir. 2005)
20 (broad arbitration clause valid for assigned servicer of loan); see also Hornbeck Offshore
21 Corp. v. Coastal Carriers Corp., 981 F.2d 752, 755 (5th Cir. 1993).

22       The Court concludes that the Arbitration Provision at issue – "any dispute" "arising
23 under or pursuant to the terms of this Agreement" "shall be settled only by Arbitration" – is
24 susceptible of an interpretation that renders all four of Filimex's claims subject to arbitration.
25 The Arbitration Provision is especially broad and clearly embraces every dispute having a
26 relationship to the License Agreement.  In order for arbitration to be mandated under such
27 a broad provision, Filimex's factual allegations need only "touch matters" covered by the
28

- 7 -

License Agreement. Simula, 175 F.3d at 721. The Court specifically finds that Filimex's trademark infringement, common law trademark, trade name and trade dress infringement, and unfair competition claims arise from the rights created by the License Agreement and the relationships which resulted from the License Agreement.  Indeed, Novoa would have never obtained the right to use the "Filiberto's" mark, trade name, and "all methods of doing business that are uniform and consistent with the operation of 'Filiberto's Mexican Food,'" had it not entered into the License Agreement. (Dkt. 1, Ex. A at ¶4.)  Moreover, the allegations associated with each of these three claims touch several matters covered by the License Agreement, including Filimex's grant of a non-exclusive license to "use the mark 'Filiberto's,'" Novoa's agreement to "accept and adopt all methods of doing business that are uniform and consistent with the operation of 'Filiberto's Mexican Food,'" and the prohibition against Novoa "engag[ing] in the preparation and sale of Mexican food similar to that underlying the mark" in the event of *termination*. (Dkt. 1, Ex. A at ¶¶1, 4a,4b,8.)

The Court rejects Filimex's argument that the Arbitration Provision does not apply to post-termination conduct because the Provision fixes no temporal boundaries to its application, but instead specifically prohibits Novoa from "engag[ing] in the preparation and sale of Mexican food similar to that underlying the mark" for two years from the effective date of termination. (Dkt. 1, Ex. A at ¶8.) Moreover, Supreme Court decisions dictate how this court must treat disputes that emerge following the termination of an agreement with a broad arbitration clause. In John Wiley & Sons, 376 U.S. 543, 554-55 (1964), the Court determined that parties' duties under an arbitration clause survive contract termination when the dispute is over an obligation arguably created by the expired contract. Subsequently the Court confirmed this principle and clarified its position that "where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 255 (1977). Although limited to disputes that have a real source in the agreement, the principle applies in cases where, as here, "there is

nothing in the [Arbitration Provision] that expressly excluded from its operation a dispute arising under the contract but based on events occurring after its termination." Id. at 253. The Arbitration Provision at issue here similarly creates a duty to arbitrate that applies even after termination of the License Agreement, because Filimex's trademark infringement, common law trademark, trade name and trade dress infringement, and unfair competition claims  arise out of the terms of the License Agreement. Supra at 7-8.

For all of these reasons, the Court finds that Filimex is bound by the License Agreement's Arbitration Provision, and Novoa is entitled to an order requiring all four claims be submitted to arbitration.

### D.    **Venue of Arbitration**

In granting Novoa's request to compel arbitration, one final question remains:  the Court must determine where it can properly compel arbitration.  The Ninth Circuit's 1941 decision in Continental Grain Co. v. Dant & Russell, 118 F.2d  967, 968-69 (9th Cir.1941), remains the controlling authority, in spite of various challenges from other circuits. See Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1271 n. 1 (9th Cir. 2002) (comparing the Ninth Circuit position with a Fifth Circuit holding in Dupuy-Busching Gen. Agency v. Ambassador Ins. Co., 524 F.2d 1275, 1276-78 (5th Cir. 1975)). Continental Grain interprets section 4 of the FAA[3] as limiting courts to ordering arbitration within the district in which the suit was filed.  The Ninth Circuit has indirectly confirmed this interpretation, stating that "by its terms, § 4 only confines the arbitration to the district in which the petition to compel is filed." Textile Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d 781, 785 (9th Cir. 2001) (emphasis in the original).

---

[3]  Section 4 of the FAA provides that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."

- 9 -

This Court is concerned that under such an interpretation a party to an arbitration agreement could avoid the effect of the agreed-to forum merely by filing suit in a different district. This, in turn, "could lead to the parties racing to different courthouses to obtain what each thinks is the most convenient forum for it, in disregard of its contractual obligations." Snyder v. Smith, 736 F.2d 409, 419-20 (7th Cir. 1984), overruled on other grounds, Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998). Absent new guidance from the Ninth Circuit, however, the Court is precluded from ordering arbitration in the contractually-designated forum of the "State of California, in the Los Angeles office of the American Arbitration Association." (Dkt. 1, Ex. A at ¶15.) See Homestake Lead Company of Missouri v. Doe Run Resources Corp., 282 F.Supp.2d 1131, 1143-1144 (N.D.Cal. 2003) (noting concern with this interpretation but finding that court was precluded from ordering arbitration in contractually designated forum).

**II.  Novoa's Motion to Dismiss Filimex's Application for Provisional Remedy**

On January 26, 2006, Filimex filed an Application for Provisional Attachment with Notice, pursuant to A.R.S. §12-1521 and Fed.R.Civ.P. 64. (Dkt. 6.) As the assignee of Leaseco, Filimex seeks a writ of attachment in the amount of $73,569.83 for the allegedly unpaid license fees due Leaseco through July 19, 2004. (Id. at 1-2.)

On February 6, 2006, Novoa filed a Motion to Dismiss Filimex's Application for a Provisional Remedy on the grounds that "this Court lacks jurisdiction to rule on the application and Filimex has failed to comply with the statutory requirements necessary to obtain a writ of attachment." (Dkt. 10 at 1.) For the reasons set forth below, the Court has specific jurisdiction to issue a writ of attachment if the requirements of A.R.S. §12-1521 have been met, even though the parties have been ordered to arbitrate all claims pursuant to 9 U.S.C. § 4. As a result, Novoa's Motion to Dismiss the Application will be denied. The Court will schedule a hearing to determine whether Filimex has complied with the statutory requirements necessary to obtain a writ of attachment and to provide Novoa an opportunity to be heard pursuant to A.R.S. §12-2407(A).

- 10 -

1    Although Chapter One of the FAA does not specifically authorize provisional relief
2    such as attachment in non-admiralty cases, the Ninth Circuit has held that such relief is
3    available if the criteria for such relief are met, even if a dispute is arbitrable and the court so
4    orders under the FAA.  See PMS Distributing Co. v. Huber & Suhner, A.G., 863 F.2d 639,
5    642 (9th Cir. 1988) (PMS).  The PMS decision involved an appeal from a district court order
6    granting a writ of possession.  PMS Distributing argued that the district court was without
7    jurisdiction to issue a writ of possession because it had ordered the parties to arbitrate all
8    claims pursuant to 9 U.S.C. § 4.  Id. at 640.  The Court of Appeals disagreed, holding, "[t]he
9    fact that a dispute is arbitrable and that the court so orders under Section 4 of the Arbitration
10   Act, 9 U.S.C. § 4, does not strip it of authority to grant a writ of possession pending the
11   outcome of the arbitration so long as the criteria for such a writ are met." Id. at 642.  The
12   PMS Court further found that, rather than conflicting with the parties' agreement to arbitrate,
13   provisional remedies such as attachment reinforce arbitration agreements by ensuring that
14   assets from which an arbitration award would be satisfied are secured while arbitration is
15   pending. See PMS, 863 F.2d at 641-42 ("[w]e believe that the congressional desire to enforce
16   arbitration agreements would frequently be frustrated if the courts were precluded from
17   issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso
18   facto, the meaningfulness of the arbitration process") (quoting Teradyne, Inc. v. Mostek
19   Corp., 797 F.2d 43, 51 (1st Cir. 1986)).

20   Although the facts in PMS Distributing involved "a writ of possession pending the
21   outcome of the arbitration," which is distinct from the situation here, the Court finds that a
22   writ of attachment is sufficiently analogous to a writ of possession to prove PMS persuasive
23   in the present case.  Because the Ninth Circuit holds that district courts have the power to
24   grant provisional remedies in cases where all claims have been ordered to arbitration, the
25   Court denies Novoa's Motion to Dismiss the Application and will schedule a hearing to
26   determine whether to grant Filimex's Application for Provisional Attachment.
27   / / /
28

**CONCLUSION**

Although the Court recognizes that Novoa has moved in the first instance to dismiss this action for lack of subject matter jurisdiction, it is within the Court's discretion to determine whether dismissal is appropriate. See Sparling v. Hoffman Construction Co., 864 F.2d 635, 637-638 (9th Cir. 1988). Filimex has filed an Application for Provisional Attachment with Notice (dkt. 6), and the Court has not yet been determined the viability of that Application. Thus, at this time, the Court will not dismiss this suit for lack of subject matter jurisdiction. Instead, the Court will order the parties to arbitration on all four claims, but will stay this case pending the Court's decision on Filimex's Application for Provisional Attachment with Notice (dkt. 6).

Accordingly,

**IT IS HEREBY ORDERED GRANTING** Defendant Novoa's Motion to Dismiss for Lack of Subject Matter Jurisdiction and request to compel arbitration on all four counts. (Dkt. 5.) Pursuant to the terms of this Memorandum of Decision and Order, the parties are required to submit all four claims to arbitration in the State of Arizona.

**IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN PART** Defendant Novoa's Motion to Dismiss Plaintiff's Application for Provisional Remedy and Request for Hearing Regarding Same. (Dkt. 10.) The Court denies Novoa's Motion to Dismiss Filimex's Application for a Provisional Remedy, but grants Novoa's request for a hearing on Filimex's Application for Provisional Attachment.

**IT IS FURTHER ORDERED THAT THE CLERK OF COURT SHALL NOT DISMISS THIS ACTION AT THE PRESENT TIME**. Rather, this case shall be **STAYED** pending the decision of the Court on Plaintiff Filimex's Application for Provisional Attachment with Notice. (Dkt. 6.)

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that a hearing on Plaintiff Filimex's Application for Provisional Attachment with Notice shall take place on August 30, 2006 at 2:00 p.m. in Courtroom 605, 401 West Washington, Phoenix, Arizona.

DATED this 17th day of July, 2006.

Stephen M. McNamee
United States District Judge